## Meyer's Estate (No. 1).

*Husband and wife—Estate by entireties—Act of June 8, 1893, P. L. 344—Bankruptcy.*

1. The Act of June 8, 1893, P. L. 344, entitled, "An Act, relating to husband and wife, enlarging her capacity to acquire and dispose of property, to sue and be sued, and to make a last will, and enabling them to sue and testify against each other in certain cases," does not change the nature of the wife's estate nor destroy the legal unity of the relation between husband and wife, and consequently does not abolish an estate by entireties existing in a husband and wife.

2. Where a testator gives his residuary estate to his daughter and her husband "absolutely and forever as tenants by entireties," a trustee in bankruptcy of the husband is not entitled, during the life of the wife, to any part of the principal or income of the estate.

Argued March 21, 1911.   Appeal, No. 77, Jan. T., 1911, by Charles J. Weiss, Trustee in Bankruptcy, from decree of O. C. Phila. Co., April T., 1904, No. 193, dismissing exceptions to adjudication in Estate of C. A. Adolph Meyer, deceased.   Before FELL, C. J., BROWN, POTTER, ELKIN and STEWART, JJ.   Affirmed.

Exceptions to adjudication.

From the record it appeared that testator died December 19, 1902, leaving a will by which he gave his residuary estate to his daughter, Clara L. Beihl, and her husband, Ernest H. Beihl, "absolutely and forever, as tenants by

entireties." On July 2, 1909, Ernest H. Beihl was adjudicated a bankrupt by the United States district court, and Charles J. Weiss was appointed his trustee in bankruptcy. The trustee in bankruptcy claimed that one-half of the fund before the court should be awarded to him as the property of the bankrupt. The auditing judge disallowed the claim.

Exceptions to the adjudication were dismissed by the court.

*Errors assigned* were in dismissing exceptions to the adjudication.

*George P. Rich,* for appellant.—Under the Act of June 8, 1893, sec. 1, P. L. 344, estates by entirety are entirely wiped out; and this fund, decedent's will having been made after the passage of the act, now belongs to Beihl and his wife, not as tenants by entirety, but as tenants in common; therefore the husband's half interest in the fund has, under the provisions of the bankrupt act, passed to and should be awarded to the trustee: Fairchild v. Chastelleux, 1 Pa. 176; French v. Mehan, 56 Pa. 286; McCurdy v. Canning, 64 Pa. 39; Dexter v. Billings, 110 Pa. 135; Lodge v. Hamilton, 2 S. & R. 491; Frankenfield v. Gruver, 7 Pa. 448; Rees v. Waters, 9 Watts, 90; Ward v. Ward, L. R. 14 Ch. Div. 506; Diver v. Diver, 56 Pa. 106; Gillan's Exrs. v. Dixon, 65 Pa. 395; Holcomb v. People's Bank, 92 Pa. 338; Bramberry's Estate, 156 Pa. 628; Parry's Est., 188 Pa. 33; Merritt v. Whitlock, 200 Pa. 50.

*Harvey Gourley,* for appellees.—The nature of the wife's estate as a tenant of the entirety with her husband is not changed by the provisions of the act of June 8, 1893, enlarging the powers of married women: Hoover v. Potter, 42 Pa. Superior Ct. 21.

OPINION BY MR. JUSTICE STEWART, May 23, 1911:
The appeal is by the trustee in bankruptcy of the estate

of Ernest H. Beihl from a decree of the orphans' court
in the adjudication of the account of the trustees under
the last will of C. A. Adolph Meyer, deceased, awarding
the fund before the court to Ernest H. Beihl and Clara,
his wife. The appellant claims the fund in virtue of his
office in bankruptcy; the appellees on the ground that the
estate vested in them as husband and wife. It is not
questioned that under the will through which this estate
was derived, husband and wife took by entireties, if indeed
such estate may still be created. The contention of appel-
lant is that this venerable and unique common-law estate
has been abolished in Pennsylvania by the Act of June 8,
1893, P. L. 344, not in express terms, but by unavoidable
implication. The act of June 8, 1893, was meant as a sub-
stitute for the earlier Act of June 3, 1887, P. L. 332, which
it expressly repeals. The primary object in each was the
same—to emancipate married women from restraints and
disqualifications with which they had been fettered by the
common law. The later act embraces within its scope
all that was gained for married women by the earlier; and
at the same time it removes other disqualifications which
the earlier left undisturbed; but it can no more be affirmed
of one than of the other, that it discloses a legislative pur-
pose to change the nature of any estate which married
women could theretofore have acquired, or destroy or
in any way interfere with the legal unity which character-
izes the relation of husband and wife, in deference to which
and for its better protection perhaps, this peculiar estate
by entireties was invented. The title to the act of 1887
reads: "An act, relating to husband and wife, defining
the rights to and over their property, to make conveyances
and contracts, authorizing them to sue and be sued on
their contracts, and for torts, and defining the interest of
husband and wife in the estate of each by will or otherwise."
The title to the act of 1893 reads, "An act, relating to
husband and wife, enlarging her capacity to acquire and
dispose of property, to sue and be sued, and to make a
last will, and enabling them to sue and testify against

each other in certain cases." Since it is squarely ruled in Bramberry's Estate, 156 Pa. 628, that the act of 1887 was, like the act of 1848, intended to protect the property of the wife from the dominion or control of the husband but not to change the nature of her estate, or destroy the legal unity of the relation, it follows that the present contention can be sustained only as it can be shown that the act of 1893, in its advance upon the act of 1887, unmistakably discloses a purpose to change the nature of the married woman's estate which she holds by entireties, and reduce it to a tenancy in common. The provision in the act which it is thought reveals such purpose is as follows: "That hereafter a married woman shall have the same right and power as an unmarried person to acquire, own, possess, contract, use, lease, sell or otherwise dispose of any property of any kind, real, personal or mixed, and either in possession or expectancy, and may exercise the said right and power in the same manner and to the same extent as an unmarried person," etc. The argument on behalf of appellant proceeds: "In fact it is difficult to conceive how there can be much broader language severing the legal fiction of unity between husband and wife and putting her, with respect to any property that she may own, on an equal footing with men." A comparison of this provision in the later act with that which more nearly corresponds in the earlier, will show how utterly unimportant, in this particular connection, is the change introduced. It reads, "Hereafter marriage shall not be held to impose any disability or incapacity in a married woman, as to the acquisition, ownership, possession, control, use or disposition of property of any kind, in any trade or business in which she may engage or for necessaries, and for the use, enjoyment and improvement of her separate estate, real or personal; or her right and power to make contracts of any kind, and to give obligations binding herself therefor; but every married woman shall have the same right to acquire, hold, possess, improve, control, use or dispose of her property, real and personal, in possession

or expectancy, in the same manner as if she were a feme
sole, without the intervention of any trustee, and with all
the rights and liabilities incident thereto, except as herein
provided, as if she were not married, and property of every
kind owned, acquired or earned by a woman, before or
during her marriage, shall belong to her, and not to her
husband or his creditors," etc.  If it can be said of the
earlier act that no intent can be discovered therein to
change the nature of the estate of a married woman, or
to destroy the legal unity of husband and wife, with quite
as much reason can the same be affirmed of the later,
whether regard be had to the title or the provisions above
quoted.  It is unnecessary to repeat here the reasoning of
the court in the case above cited.  It was satisfactory to
the court then, and its correctness has never since been
questioned.   With the judicial interpretation of the act
of 1887, to the effect that it did not change estates by
entireties, it is hardly supposable that when the legisla-
ture in 1893 came to substitute another act for that, if the
intention was to put an end to "the legal fiction of unity
between husband and wife," and abolish such estates, that
it would have left such intent to be derived by implication,
and that too, from provisions in the substitute which no
more clearly indicate such intent than those in the act
repealed, to say nothing of its rejection of the easier, sim-
pler and more certain method it might have adopted, the
enacting in a single line that thereafter estates in entire-
ties should be held as estates in common.   Were there
nothing else in the case to forbid the implication which
the appellant seeks to raise, that feature of the act of 1893
which limits the right of the wife to divide her estate or
protect it from the husband by adverse legal proceedings
only in case the husband has deserted, or refused to sup-
port her, would be sufficient in itself.   This qualification
and restriction of the right to sue the husband shows
clearly, that however much the identity of relation has
suffered by modern legislation, enough of it remained to
call for the protection of the wife against the husband at

least to the extent of leaving existing estates by entireties untouched. We find nothing in the case supporting appellant's contention, and therefore overrule the assignments of error which challenge the action of the court in denying him participation in the fund.

It is further complained of as error that the court refused to order proper security to be given for the payment to the trustee of one-half the income arising during the life of the wife from the fund for distribution. Whatever the rights of the trustee may be with respect to the fund in the event of the husband surviving his wife, it is too plain for discussion that, except as estates by entirety no longer exist, he can have no present right of enjoyment. We have just held that they do still exist. In estates of this kind husband and wife are not joint tenants or tenants in common, but both are seized of the entirety, per tout et non per my. As a consequence neither can dispose of any part without the consent of the other, but the whole must remain to the other. It follows that the interest of the appellant in the fund in dispute, under all our authorities defining this kind of estate, and its characteristics, is at most a contingent one; he is not presently substituted for the husband, and cannot be. His right to the use and enjoyment of any part of the fund must await the happening of the contingency of the husband surviving the wife. Until that happens the wife's right to the enjoyment of the whole may not be disputed by anyone claiming under the husband. The very enlightening discussion of the subject in the able opinion of Judge THAYER, approved and adopted by this court in McCurdy v. Canning, 64 Pa. 39, and which has consistently been followed, makes further citation of authority for the views here expressed, unnecessary. This assignment of error is likewise overruled and the appeal is dismissed.